Nos. 24-3060, 24-3061, 24-3062, 24-3063 (consol.)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| CALEB BARNETT, BRIAN NORMAN, HOOD'S GUNS & MORE, PRO GUN AND INDOOR RANGE, and NATIONAL SHOOTING SPORTS FOUNDATION, INC., | ) ) ) ) ) ) | Appeal from the United States District Court for the Southern District of Illinois |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 3:23-cv-00209-SPM |
| KWAME RAOUL, Attorney General of the State of Illinois, and BRENDAN F. KELLY, Director of the Illinois State Police, | ) ) ) ) ) ) | The Honorable STEPHEN P. McGLYNN, |
| Defendants-Appellants. | ) | Judge Presiding.[1] |

**REPLY IN SUPPORT OF MOTION
TO STAY INJUNCTION PENDING APPEAL**

For the second time in two years, the district court enjoined defendants from enforcing the Protect Illinois Communities Act ("Act") in its entirety and statewide. Defendants have explained why the court's opinion — which conflicts with opinions of the First, Fourth, and D.C. Circuits, as well as this court's own opinion in *Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023) — is likely to be reversed and why its injunction, if it takes effect, will damage public safety in Illinois. Plaintiffs' response

---

[1] Together with *Harrel v. Raoul*, No. 24-3061; *Langley v. Kelly*, No. 24-3062; and *Federal Firearms Licensees of Illinois v. Pritzker*, No. 24-3063.

identifies no persuasive reason to allow the injunction to take effect. The court should stay the injunction and preserve the status quo while it considers the appeal.

## ARGUMENT

**I. The stay motion complies with Rule 8.**

Plaintiffs' response falters at the start. Plaintiffs say that defendants failed to comply with Fed. R. App. P. 8 by failing to seek a stay first from the district court and by failing to provide reasonable notice of the motion. Opp. 7-9.[2] Plaintiffs are wrong.

First, defendants complied with Rule 8(a)(1). That rule requires a party seeking a stay in the court of appeals to "move first in the district court." Fed. R. App. 8(a)(1). Defendants did so. In their post-trial brief, defendants asked the court to "stay[ ]" "any injunction . . . pending appeal — or at the very least for ten days while defendants seek relief in the Seventh Circuit." Doc. 248 at 61. In fact, defendants explained that a stay pending appeal was warranted because such a stay would preserve the status quo, be consistent with this court's decision to issue a stay at the preliminary-injunction stage, and benefit the public, *see id.* (citing *In re A & F Enters., Inc. II*, 742 F.3d 763 (7th Cir. 2014)) — the very same arguments made before this court. Plaintiffs thus misread the record in asserting that the district court "*sua sponte* stayed its injunction," Opp. 7; rather, the court understood defendants to request a stay under Rule 8(a)(1) and issued a 30-day stay to allow

---

[2] Citations to "A__" are to the appendix, citations to "Doc. __" are to the *Barnett* district-court docket, citations to "Mot. __" are to defendants' motion, and citations to "Opp. __" are to plaintiffs' response.

2

them to "seek relief in the Seventh Circuit," Doc. 248 at 61, as they suggested they would. That is just what Rule 8(a)(1) contemplates.

Plaintiffs also complain that defendants failed to "give [them] reasonable notice of the motion," as required by Rule 8(a)(2)(C). Opp. 9. But plaintiffs' counsel below was automatically entered as their appellate counsel of record when the appeal was docketed, and thus received "notice of the motion" through the CM/ECF system. That complied with this court's rules and procedures, *see* 7th Cir. R. 25(a); 7th Cir. CM/ECF Manual 4 (for "a CM/ECF participant, receipt of an NDA constitutes service of that document or order"), and plaintiffs identify no reason it was not "reasonable" under the circumstances. (Plaintiffs certainly cannot claim to have been prejudiced, as this court gave them almost two weeks to respond to the motion. 7th Cir. Doc. 8.) And to the extent plaintiffs think Rule 8(a)(2)(C) somehow required defendants to provide them with notice of their motion "before" filing it, Opp. 7, they cite no case reading the rule that way, and defendants are aware of none.

## II. Defendants are likely to succeed on the merits.

Defendants explained why they are likely to succeed on appeal: Plaintiffs failed to show that the weapons regulated by the Act are "arms" protected by the Second Amendment, and defendants established a historical tradition of regulating dangerous and unusual weapons. Mot. 7-17. Plaintiffs' responses are unavailing.[3]

---

[3] Plaintiffs appear to suggest that defendants must meet a heightened standard because they seek to stay a *permanent*, not a *preliminary*, injunction. Mot. 7, 9 (State must show that it is "significantly likely" to prevail on appeal); *see also id.* at 18, 20 ("substantially likely" to prevail). But plaintiffs' cited case, *Hinrichs v. Bosma*, 440 F.3d 393 (7th Cir. 2006), does not distinguish between permanent and preliminary

3

### A. Assault weapons and LCMs are not "arms."

First, as defendants explained, the district court erred in concluding that assault weapons and LCMs are "arms" covered by the Second Amendment. The record showed that assault weapons and LCMs are more like military-grade weaponry than firearms suitably used for self-defense, Mot. 11-13, and the district court reached a contrary conclusion only by rejecting the framework that *Bevis* set out and accepting arguments that *Bevis* rejected, *id.* at 8-10. Plaintiffs' attempts to rehabilitate the district court's step-one holding lack merit.

Plaintiffs' primary defense of the opinion below is that this court in *Bevis* specifically "contemplated" that the parties might amass a factual record that would "demonstrate that [this court's] preliminary views were mistaken," Opp. 10-11, and that that is what occurred below. Plaintiffs are half right: The parties did compile an extensive record regarding (among other things) the weapons regulated by the Act and their similarities to military-grade technology. Mot. 11-13; *see* Doc. 247, ¶¶ 32-393 (defendants' proposed findings of fact). But the district court's step-one reasoning did not turn on its engagement with that record. Rather, the court's reasoning turned largely on two facts, both of which were considered and rejected by *Bevis*: that assault weapons and LCMs are commercially popular, A100-02, and that assault weapons like the AR-15 are unlike their military counterparts because they are capable only of semiautomatic fire, A110-13. The district court, in other words,

---

relief, and it relies on a non-permanent-injunction case for its articulation of the legal standard, *id.* at 396.

4

did not sift through a "mountain of evidence" to reach its step-one conclusion, as plaintiffs suggest, Opp. 13; rather, the court issued an opinion that largely tracked its prior views and the reasoning of the *Bevis* dissent.

Consider, for instance, the district court's discussion of whether the weapons regulated by the Act are "weapons in common use for self-defense." *Bevis*, 85 F.4th at 1192. The court relied largely on evidence that was before this court in *Bevis*: survey data asserting that "*millions* of Americans own AR-15s at this very moment." A101 (emphasis in original); *accord* A102 ("AR-type weapons . . . have been called the country's most popular rifle for decades"). The *Bevis* dissent would have relied on exactly that evidence to find that such weapons are in "common use," 85 F.4th at 1214-15 (Brennan, J., dissenting), but the majority rejected its utility, explaining that whether a weapon is in "common use for self-defense" cannot be based "on numbers alone," *id.* at 1198-99 (majority opinion). The district court, in other words, based its step-one holding not on the evidence developed on remand, but on facts considered and discounted in *Bevis*. For their part, plaintiffs argue that the "voluminous record" contains *other* evidence — specifically, plaintiffs' proposed findings of fact — on which the district court *could* have relied to find that assault weapons are "arms," Opp. 13, but the court did not rely on (or, at minimum, cite) this evidence in reaching that conclusion.[4] The court certainly made no "factual finding" on "common use," *id.* at 16, to which this court could defer on appeal.

---

[4] Plaintiffs also assert that the district court "relied on an estimation of common use that *the state's expert supplied*," *id.* (emphasis in original), but both plaintiffs and the district court badly misread the record. The expert in question did not estimate that

5

The district court's discussion of the difference between AR-15s and military-grade weaponry is likewise flawed, as defendants explained, Mot. 10, in that it relies heavily on an argument that *Bevis* considered and rejected — namely, that AR-15s can be fired only in semiautomatic mode, whereas military-grade weapons like the M16 can be fired in burst or automatic mode, too. *See Bevis*, 85 F.4th at 1195-96. Plaintiffs insist that the district court's conclusion is consistent with *Bevis* because *Bevis* did not "'rule out the possibility that the plaintiffs w[ould] find other evidence' that [might] demonstrate its preliminary views were mistaken." Opp. 10 (citing 85 F.4th at 1197); *accord id.* at 14-15 (arguing that "the 'select-fire' distinction is far more significant than *Bevis* appreciated"). But the only evidence cited by the court for its military-use conclusion was testimony that the AR-15 "has *never* been used by any military force on the planet." A107 (emphasis in original). Beyond that fact — which, like the survey evidence the district court cited for its common-use analysis, was before this court in *Bevis*[5] — the district court relied only on the *Bevis* dissent, A108 (citing 85 F.4th at 1222 (Brennan, J., dissenting)), and dicta in an unrelated Supreme Court opinion, A108-09 (citing *Garland v. Cargill*, 602 U.S. 406 (2024)). That "evidence" cannot justify overturning this court's preliminary conclusion that

---

"millions of Americans own AR-15s," A101 (citing Doc. 258, ¶ 98); he summarized a survey on which *plaintiffs* relied, Doc. 190-1 at 19-20, while attesting to his own view that "the circulation and ownership rates for assault weapons are indeterminable," *id.* at 8.

[5] *Compare Barnett* Appellees' Br. at 50 n.13, *Bevis*, 85 F.4th 1175 (No. 23-1825) ("'[N]o military in the world uses a service rifle that is semiautomatic only.'" (quoting Wallace, *"Assault Weapons" Myths*, 43 S. Ill. L.J. 193, 203-04 (2018))), *with* A107 (citing the same source for the same proposition).

6

the weapons the Act regulates are "more like machineguns and military-grade weaponry than they are like the many different types of firearms that are used for individual self-defense." *Bevis*, 85 F.4th at 1195; *accord Bianchi v. Brown*, 111 F.4th 438, 452 (4th Cir. 2024) (*en banc*) ("[T]hese are not the modern equivalents of weapons that were commonly possessed and employed for self-preservation by your shopkeeper, or your butcher, or your blacksmith up the road in colonial America — the disarmament of whom the Second Amendment was ratified to prevent.").[6]

B. **The Act is consistent with history and tradition.**

The district court likewise erred in concluding that the State had not met its burden of showing that the Act is "consistent with this Nation's historical tradition." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). To the contrary, the State showed that the Act is consistent with a historical tradition of regulating especially dangerous weapons, as this court held in *Bevis* and as the First, Fourth, and D.C. Circuits have concluded about laws regulating assault weapons and LCMs. *Hanson v. District of Columbia*, 120 F.4th 223 (D.C. Cir. 2024) (*per curiam*); *Bianchi*, 111 F.4th 438; *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38 (1st Cir. 2024). The district court reached a contrary conclusion by expressing "concern"

---

[6] Plaintiffs also argue that the opinion below could be affirmed on the ground that the weapons regulated by the Act are "dual use" weapons. Opp. 11 (citing *Bevis*, 85 F.4th at 1195 n.8). But plaintiffs and the district court misread a footnote in *Bevis*, which did not establish a unique category of weapons with special status under the Second Amendment. Rather, *Bevis* made the unremarkable observation that some weapons used in civilian life are also issued by the military (for instance, officers' pistols) and that fact alone does not mean such weapons are not "arms."

7

about this court's preliminary conclusions and instead crediting the competing historical account offered by the *Bevis* dissent. A151; *see* Mot. 13-17.

Plaintiffs do not defend that aspect of the district court's reasoning. Opp. 17-20. Instead, they argue that, because the district court concluded that the weapons regulated by the Act are "arms" under the Second Amendment, rather than weapons useful predominantly for military purposes, "the state bore the burden of identifying some *other* historical tradition that could justify its law." Opp. 18 (emphasis added). But that argument adopts too narrow a reading of *Bevis*: The court there went on to *Bruen*'s second step even assuming that assault weapons and LCMs *were* "Arms (*i.e.*, non-militaristic weapons)," and held that the Act's regulation of these weapons was consistent with a "long-standing tradition of regulating the especially dangerous weapons of the time," 85 F.4th at 1199, whether such items were "militaristic" or not. Plaintiffs are wrong, that is, to contend that the historical tradition *Bevis* identified at step two allows a State to regulate only those items a court finds are not "arms" at step one; were that the case, *Bevis* would not have discussed history at all.

Plaintiffs separately defend the district court's rejection of defendants' historical analogues, contending primarily that they are inapposite because they do not "ban sale or possession," but merely carriage or use. Opp. 19. But defendants explained why this approach is inconsistent with *Rahimi*, which upheld a federal statute far less like its historical analogues than the Act. Mot. 15; *United States v. Rahimi*, 602 U.S. 680, 700 (2024). Plaintiffs have no real response except to insist that the district court "did not rest its decision on" such reasoning. Opp. 19. At

8

bottom, neither plaintiffs nor the district court offer any reason to second-guess defendants' historical regulations beside the fact that "the particulars . . . varied from place to place, and that some were more absolute than others." *Bevis*, 85 F.4th at 1199. But *Bevis* considered that argument and rejected it, and plaintiffs identify no basis to depart from that decision, especially in this posture.

### III. The equitable factors necessitate a stay.

Finally, a stay should be granted because the equitable factors favor retaining the status quo pending appeal. Plaintiffs' handful of counterarguments, Opp. 20-21, do not show otherwise.

Plaintiffs' primary critique is that defendants merely "speculat[e]" that allowing the injunction to take effect could damage public safety in Illinois. Opp. 20-21. But there is a documented link between mass shootings and access to assault weapons. Mot. 18 (citing expert testimony). And, as the D.C. Circuit observed, during the week in which California's analogous LCM ban was enjoined, "over one million [LCMs] flooded into" that State. *Hanson*, 120 F.4th at 246 (cleaned up). So this is hardly a case in which the "claimed harm to the public interest is based entirely on speculation," Opp. 21; rather, the harm to the public interest rests on the well-supported connection between assault weapons and violent crime. Defendants pointed to this evidence in the stay motion, but plaintiffs did not address it, electing instead to simply assert that defendants' argument rests on "conjecture." *Id.* But saying it does not make it so.

Plaintiffs also do not seriously dispute that the injunction's limitless scope underscores the need for a stay. Mot. 18-19. Plaintiffs do not dispute, for instance, that the district court enjoined the statewide enforcement of provisions that plaintiffs did not challenge and that the court agreed were constitutional. *Id.* Plaintiffs simply say that, if there is an "issue with the clarity of the district court's injunction," the court can address that on remand. Opp. 21. But the issue is not that the injunction is *unclear*; rather, the district court clearly stated that it was enjoining the entire Act based on its view that its provisions were not severable. A164-68. Plaintiffs appear to agree with that description of the injunction, Opp. 6 (district court "permanently enjoin[ed] application of [the Act]"), so the issue is not the injunction's clarity, but its breadth. Plaintiffs assert that the injunction is not "unbounded" because it applies only to "citizens in Illinois who wish to exercise their Second Amendment rights." Opp. 21. But that is circular. The court's injunction is flawed and overbroad. It should be stayed pending appeal.

## CONCLUSION

The court should stay the injunction pending appeal.

                Respectfully submitted,

                KWAME RAOUL
                Attorney General
                State of Illinois

By:   /s/ Megan L. Brown
      ALEX HEMMER
      Deputy Solicitor General
      MEGAN L. BROWN
      Assistant Attorney General
      115 South LaSalle Street

Chicago, Illinois 60603  
(224) 204-9642 (office)  
(312) 415-6318 (cell)  
Megan.Brown@ilag.gov

**CERTIFICATE OF COMPLIANCE WITH PAGE LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this motion complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this motion has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365, in 12-point Century Schoolbook BT font, and complies with Federal Rule of Appellate Procedure 27(d)(2)(C) in that the motion contains 2,596 words.

/s/ Megan L. Brown
MEGAN L. BROWN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(224) 204-9642 (office)
(312) 415-6318 (cell)
Megan.Brown@ilag.gov

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on December 3, 2024, I electronically filed the foregoing Motion to Stay Injunction Pending Appeal with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I certify that the other participants in this appeal are CM/ECF users and will be served by the CM/ECF system.

/s/ Megan L. Brown
MEGAN L. BROWN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(224) 204-9642 (office)
(312) 415-6318 (cell)
Megan.Brown@ilag.gov