**Nos. 24-3060, 24-3061, 24-3062, 24-3063**

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

—————————

CALEB BARNETT, et al.,

*Plaintiffs-Appellees*,

v.

KWAME RAOUL, Attorney General of Illinois,
and BRENDAN F. KELLY, Director of the Illinois State Police,

*Defendants-Appellants*.

—————————

On Appeal from the United States District Court for the
Southern District of Illinois,
No. 3:23-cv-215-SPM

—————————

**RESPONSE BRIEF OF APPELLEES FEDERAL FIREARMS LICENSEES
OF ILLINOIS, GUNS SAVE LIFE, GUN OWNERS OF AMERICA, INC.
GUN OWNERS FOUNDATION, PIASA ARMORY, JASMINE YOUNG,
AND CHRIS MOORE**

—————————

C.D. Michel
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com
*Counsel for* Federal Firearms Licensees of Illinois *Appellees*

June 6, 2025

i

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

The undersigned counsel for Plaintiffs-Appellees furnishes the following statement in compliance with Circuit Rule 26.1:

(1)   The full name of every party that the attorney represents in the case:

*Federal Firearms Licensees of Illinois* Appellees (3:23-cv-215-SPM)
Federal Firearms Licensees of Illinois
Guns Save Life
Gun Owners of America
Gun Owners Foundation
Piasa Armory
Jasmine Young
Chris Moore

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

*Federal Firearms Licensees of Illinois* Appellees (3:23-cv-215-SPM)
Shaw Law Ltd.
Michel & Associates, P.C.

(3)   If the party or amicus is a corporation:

i)     Identify all its parent corporations, if any:

Federal Firearms Licensees of Illinois, Guns Save Life, Gun Owners of America, Inc., Gun Owners Foundation, and Piasa Armory have no parent corporations.

ii)    List any publicly held company that owns 10% or more of the party's or amicus' stock:

No company owns 10% or more of Federal Firearms Licensees of Illinois, Guns Save Life, Gun Owners of America, Inc., Gun Owners Foundation, or Piasa Armory's stock.

s/ C.D. Michel
C.D. Michel
Counsel for *Federal Firearms Licensees of Illinois* Appellees

June 6, 2025

ii

# TABLE OF CONTENTS

**Page**

Circuit Rule 26.1 Disclosure Statement ................................................................... ii

Table of Contents ....................................................................................................... iii

Table of Authorities .................................................................................................. iv

Introduction ................................................................................................................1

Jurisdictional Statement ...........................................................................................1

Statement of the Issue ...............................................................................................1

Statement of the Case ................................................................................................1

Summary of the Argument ........................................................................................2

Standard of Review ....................................................................................................2

Argument.....................................................................................................................2

I.     The District Court Correctly Held That PICA's Firearms and Parts Bans
       Violate the Second Amendment ...................................................................2

II.    The District Court Correctly Held That PICA's Restriction on Firearm Parts
       Violates the Second Amendment..................................................................6

III.   The District Court Correctly Held That PICA's Registration Requirement
       Violates the Second Amendment..................................................................9

Conclusion .................................................................................................................12

Certificate of Compliance with Type-Volume Limitation ......................................13

Certificate of Compliance with Circuit Rule 30(D) ...............................................14

Certificate of Service ...............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ames v. Ohio Dep't of Youth Servs.*,
    No. 23-1039, 2025 WL 1583264 (Sup. Ct. June 5, 2025) ........................... 3

*Barnett v. Raoul*,
    756 F. Supp. 3d 564 (S.D. Ill. 2024) ..................................................... 7, 10

*Bevis v. City of Naperville*,
    85 F.4th 1175 (7th Cir. 2023) ........................................................3-4, 7, 10

*Bondi v. VanDerStok*,
    145 S. Ct. 857 (2025) ...................................................................... 9

*Caetano v. Massachusetts*,
    577 U.S. 411 (2016) ....................................................................... 5

*District of Columbia v. Heller*,
    554 U.S. 570 (2008).......................................................................2-5

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ........................................................... 8

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ....................................................... 10

*Jackson v. City & Cnty. of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) ........................................................... 8

*Mock v. Garland*,
    697 F. Supp. 3d 564 (N.D. Tex. 2023).................................................. 9

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022)...................................................................2-5, 10-11

*Silveira v. Lockyer*,
    328 F.3d 567 (9th Cir. 2003) ........................................................... 11

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    No. 23-1141, 2025 U.S. LEXIS 2199 (Sup. Ct. June 5, 2025) ................... 4

iv

*Snope v. Brown*,
  No. 24-203, 2025 U.S. LEXIS 2172 (Sup. Ct. June 2, 2025) ..................... 3

*United States v. Rahimi*,
  602 U.S. 680 (2024) ................................................................................3-5

*VanDerStok v. Garland*,
  86 F.4th 179 (5th Cir. 2023) .......................................................................... 9

*Watterson v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
  No. 23-11157, 2024 WL 3935446 (5th Cir. Aug. 26, 2024) ....................... 9

**Statutes**

18 U.S.C.A. § 926 ........................................................................................... 12

28 U.S.C. § 1291 ............................................................................................... 1

28 U.S.C. § 1331 ............................................................................................... 1

28 U.S.C. § 1343 ............................................................................................... 1

430 ILCS 65/4.1 .............................................................................................. 10

720 ILCS 5/24-1.9................................................................................*passim*

**Rules**

Fed. R. App. P. 28................................................................................................ 2

**Other Authorities**

4 William Blackstone,
  *Commentaries on the Laws of England* (John Taylor Coleridge
  ed., 1825) ...................................................................................................... 5

Flanders, Henry,
  *An Exposition of the Constitution of the United States* (1860) .................. 11

Mansfield, Edward D.,
  *The Political Manual: Being a Complete View of the Theory and
  Practice of the General and State Governments of the United States,
  Adapted to the Use of Colleges, Academies, and Schools* (1861) ............ 11

Robinson, William C.,
  *Notes On Elementary Law* (1875) ............................................................. 11

Wharton, Francis,
     *A Treatise on the Criminal Law of the United States* (2d ed. 1852)............ 6

Young, Andrew W. & Salter S. Clark,
     *The Government Class Book: A Youth's Manual of Instruction in the
     Principles of Constitutional Government and Law* 185 (1880) ................ 11

## INTRODUCTION

Shortly after the enactment of the "Protect Illinois Communities Act" ("PICA"), four separate plaintiff groups, comprised of individuals, businesses, and organizations dedicated to firearm rights filed legal challenges asserting that PICA violates the Second Amendment. Two of those groups have already filed response briefs with this Court. Appellees Federal Firearms Licensees of Illinois, Guns Save Life, Gun Owners of America, Inc., Gun Owners Foundation, Piasa Armory, Jasmine Young, and Chris Moore ("*FFL-IL* Appellees") generally join and adopt by reference arguments from both of those briefs. They write separately, however, to clarify a meaningful departure from their fellow Appellees' legal analysis and to address specific challenges to PICA's firearm-parts restriction and registration requirement which the others do not raise.

## JURISDICTIONAL STATEMENT

The State's jurisdictional statement is accurate but incomplete. The district court had jurisdiction under 28 U.S.C. § 1331 and § 1343. This Court has jurisdiction under § 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly held, after a trial on the merits and extensive fact-finding, that PICA restricts the keeping and bearing of "Arms" within the meaning of the Second Amendment and is inconsistent with historical tradition.

## STATEMENT OF THE CASE

*FFL-IL* Appellees join and adopt by reference the Statement of the Case in the Response Briefs filed by their fellow Appellees Caleb Barnett, Brian Norman,

Hood's Guns & More, Pro Gun & Indoor Range, and National Shooting Sports Foundation, Inc., ("*Barnett* Appellees"), and Appellees Dane Harrel, C4 Gun Store, LLC, Marengo Guns, Inc., Illinois State Rifle Association, Firearms Policy Coalition, Inc., and Second Amendment Foundation ("*Harrel* Appellees").

## SUMMARY OF THE ARGUMENT

*FFL-IL* Appellees join and adopt by reference the Summary of Argument in the Response Briefs filed by their fellow *Barnett* Appellees, and *Harrel* Appellees, with the addition that they claim PICA's restriction on firearm parts and its registration requirement violate the Second Amendment.

## STANDARD OF REVIEW

*FFL-IL* Appellees adopt by reference the Standard of Review set forth by the *Barnett* Appellees.

## ARGUMENT

I.    **THE DISTRICT COURT CORRECTLY HELD THAT PICA'S FIREARMS AND PARTS BANS VIOLATE THE SECOND AMENDMENT**

PICA's ban on numerous commonly owned firearms violates the Second Amendment for the reasons thoroughly explained in the Response Briefs filed by the *Barnett* Appellees and the *Harrel* Appellees. Under Fed. R. App. P. 28(i); *FFL-IL* Appellees join and adopt by reference those briefs, except as explained below.

First, the Appellees fully adopt the *Harrel* Appellees' argument that this Court's panel decision in *Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023), was wrongly decided and stands in direct conflict with the U.S. Supreme Court's Second Amendment standard as articulated in *District of Columbia v. Heller*, 554

U.S. 570 (2008), *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024). In short, this appeal is easily resolved applying *Heller*, *Bruen*, and *Rahimi* without resort to the *Bevis* panel's atextual and ahistorical "distinction between military and civilian weaponry" and the contrived factfinding such a distinction invites. *Bevis*, 85 F.4th at 1201. Indeed, "[a]textual, judge-created legal rules have a tendency to generate complexity, confusion, and erroneous results." *Ames v. Ohio Dep't of Youth Servs.*, No. 23-1039, 2025 WL 1583264, at *12 (Sup. Ct. June 5, 2025) (Thomas, J., concurring). This Court should reject application of the *Bevis* standard altogether, because it conflicts with and is foreclosed by binding Supreme Court precedent.

Next, the firearms and parts that PICA bans are "Arms" under the Second Amendment's plain text, being "[w]eapons of offence, or armour of defence" and "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581. Accordingly, they are "instruments that constitute bearable arms," including "modern instruments that facilitate armed self-defense," to which "the Second Amendment extends, prima facie." *Heller*, 554 U.S. at 582; *Bruen*, 597 U.S. at 28; *see also Snope v. Brown*, No. 24-203, 2025 U.S. LEXIS 2172, at *7 (Sup. Ct. June 2, 2025) (Thomas, J., dissenting from denial of certiorari) (citation omitted) ("Under the plain text of the Second Amendment, the challengers' only burden is to show that AR-15s are bearable 'Arms' – i.e., '[w]eapons of offence.' By any measure, they are."). The State therefore bears the burden of showing its regulation of "arms-bearing conduct" is "consistent with the principles that underpin our regulatory tradition" by "apply[ing]

3

faithfully the balance struck by the founding generation." *Rahimi*, 602 U.S. at 691, 692.

That said, even if the State could proffer a relevant national historical tradition at the Founding (it cannot), such a tradition would be immaterial because PICA's banned arms "are unquestionably in common use today," and so its ban simply "is invalid" as a categorical matter. *Bruen*, 597 U.S. at 47; *Heller*, 554 U.S. at 629. Indeed, as a *unanimous* Supreme Court explained just yesterday, "AR-15 rifles, AK-47 rifles, and .50 caliber sniper rifles," all of which are banned by PICA, "are both *widely legal* and *bought by many ordinary consumers*. []The AR-15 is *the most popular rifle in the country*." *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, No. 23-1141, 2025 U.S. LEXIS 2199, at *20 (Sup. Ct. June 5, 2025) (emphases added). The Court made that observation despite the plaintiff considering such arms "'military style' assault weapons." *Id*. Because "the traditions of the American people . . . demand[] our unqualified deference," *Bruen*, 597 U.S. at 26, PICA's banning firearms the American people choose must fail.

But even if this Court were to apply the *Bevis* framework, the firearms PICA bans easily satisfy the *Bevis* standard for the reasons stated in the *Barnett* Appellees' Response Brief. Accordingly, the *FFL-IL* Appellees fully adopt the *Barnett* Appellees' arguments to that effect.

Finally, where the *FFL-IL* Appellees part ways with the *Harrel* and *Barnett* Appellees is to the extent that they accept the theory that a "historical tradition of prohibiting the *carrying* of 'dangerous and unusual weapons'" might in fact support a ban on the *ownership* or *simple possession* of bearable arms; the *FFL-IL* Appellees

do not join such argument. *See Heller*, 554 U.S. at 627. Each time the Supreme Court has referred to such a tradition in dicta, it has been in the context of *carrying* certain weapons in a certain manner, not a flat ban on entire classes of arms. *See id.*; *Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016) (per curiam); *Bruen*, 597 U.S. at 21; *Rahimi*, 602 U.S. at 691. This tradition of *carry* restrictions therefore fails as a historical analogue for limiting the *scope* of the Second Amendment's protected "Arms," under *Bruen*'s own methodology. Indeed, a historical limitation on certain *public carry* does not "impose a comparable burden on the right of armed self-defense" to a far broader modern prohibition on mere ownership. *Bruen*, 597 U.S. at 29. To rely on such a tradition of regulating certain behavior, to claim that certain weapons may be banned entirely, would fail *Bruen*'s "how" metric of analogical reasoning. *See id.* at 29.

Properly understood, the historical regulation of *carrying* "dangerous and unusual weapons" was entirely contextual, reaching only certain forms of public carry with certain types of arms that constituted circumstantially unjustified and disproportionate uses of force that terrified bystanders. As *Heller*'s source for this tradition, Sir William Blackstone, explained, such a prohibition was an "Offence[] Against the *Public Peace*." 4 William Blackstone, *Commentaries on the Laws of England* 142 (John Taylor Coleridge ed., 1825), *available at* https://archive.org/details/commentariesonl04blacgoog/page/n174/mode/2up. (emphasis added). It thus shared a common theme with the 12 other common-law offences with which it was codified. All were "either … an actual breach of the peace; or constructively so, by tending to make others break it." *Id.* The relevant text

of this historical regulation reads: "The offence of riding or going armed, with dangerous or unusual weapons, is a crime against the public peace, by terrifying the good people of the land...." *Id.* at 149.

And as a later treatise by Francis Wharton explained:

> [T]here may be an affray where there is no actual violence; as where a man arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people, which is said to have been always an offence at common law.... [But] *it is clear that no one incurs the penalty of the statute for assembling his neighbours and friends in his own house*, against those who threaten to do him any violence therein, because a man's house is his castle.

Francis Wharton, *A Treatise on the Criminal Law of the United States* 726-27 (2d ed. 1852), *available at* https://babel.hathitrust.org/cgi/pt?id=mdp. 35112101897975&seq=764 (emphasis added).

As these historical sources confirm, the regulation of the public *carry* of "dangerous and unusual weapons" was context-dependent, and liability did not attach to the simple *possession* of firearms or their ownership within the home. The "public peace" cannot possibly be "breached" by doing *that*. Thus, the "dangerous and unusual" test for context-based carry restrictions has no application here, as it cannot be applied as a framework for determining the constitutionality of PICA's arms *ban*.

## II. THE DISTRICT COURT CORRECTLY HELD THAT PICA'S RESTRICTION ON FIREARM PARTS VIOLATES THE SECOND AMENDMENT

PICA prohibits the manufacturing, acquisition, and unregistered possession of parts it labels "assault weapon attachments." 720 ILCS 5/24-1.9(b). It defines that term to include "any device capable of being attached to a firearm that is specifically

6

designed for making or converting a firearm into any of the firearms listed in paragraph (1) of this subsection (a)." 720 Ill. Comp. Stat. Ann. 5/24-1.9(a)(3). "Any part or combination of parts designed or intended to convert a firearm into an assault weapon" is itself also an "assault weapon." 720 Ill. Comp. Stat. Ann. 5/24-1.9(a)(1)(I). The district court correctly held that the firearm parts ("attachments") proscribed by PICA are "Arms" included within the protective reach of the Second Amendment in line with *Friedman* and *Bevis*. . .." *Barnett v. Raoul*, 756 F. Supp. 3d 564, 649 (S.D. Ill. 2024), and enjoined PICA's restriction on them.

The State argues that the Second Amendment has nothing to say about such parts because, according to the State, they are not "arms"—either because they are "militaristic" or they are unnecessary accessories. State.Br.27-31. Neither argument comports with the evidentiary record or legal precedent.

As the *Barnett* Appellees aptly explain, "the evidence overwhelmingly showed that the features PICA singles out—"pistol grips, forward-protruding grips, thumbhole stocks, adjustable stocks, flash suppressors, barrel shrouds, buffer tubes/braces, and threaded barrels," are not unique to military arms, but are utterly useful for self-defense. The State's only argument for why those parts are "militaristic" is that they "convert otherwise lawful weapons into assault weapons." State.Br.27. But that is a circular argument without any actual point. Yes, attaching a pistol grip, for example, could, but not necessarily, make a firearm into an "assault weapon" under PICA. But the State fails to explain how that makes the firearm "predominantly useful for military purposes." Neither the pistol grip nor any of the "attachments" restricted by PICA effects what the bullet does. They are all designed

for more efficient, safer handling of the firearm to which they are affixed. D.Ct.Dkt.253 ¶110; *see also id.* ¶¶46-51, 79-80, 118 (pistol grips); *id.* ¶¶49, 52-55, 74, 79-80, 115 (forward grips); *id.* ¶¶ 56-58, 79-80 (thumbhole stocks); *id.* ¶¶56-58, 79-80 (adjustable stocks); *id.* ¶¶66-70, 117 (flash suppressors); *id.* ¶¶71-74, 116 (barrel shrouds); *id.* ¶¶49, 75-76, 119 (braces); *id.* ¶¶77-78 (threaded barrels). The State does not dispute a single piece of evidence Appellees put forward establishing that those features aid in civilian self-defense.

Because they serve such a purpose, the parts PICA restricts cannot be dismissed as mere accessories that government has complete say over. The Second Amendment protects the acquisition and possession of common firearm parts. And for good reason. Just as "without bullets, the right to bear arms would be meaningless," *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (citing *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)), without component parts, so too could firearms be rendered useless or significantly neutered. Indeed, if government could restrict firearm parts unchecked, it would have the power to restrict protected firearms by targeting their critical parts, as Illinois has done with PICA.

Parts must be protected for another practical reason. "The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). One obviously cannot maintain proficiency with a firearm that is in disrepair or that does not suit her specific physical needs. The ability to repair, alter, and make

8

firearms to address those practical concerns is thus conduct that the Second Amendment necessarily protects. *See*, *e.g.*, *VanDerStok v. Garland*, 86 F.4th 179, 185 (5th Cir. 2023), *rev'd and remanded on other grounds Bondi v. VanDerStok*, 145 S. Ct. 857 (2025) ("The tradition of at-home gun-making predates this nation's founding, extends through the revolution, and reaches modern times."); *see also Mock v. Garland*, 697 F. Supp. 3d 564, 583 (N.D. Tex. 2023), *appeal dismissed as moot sub nom. Watterson v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 23-11157, 2024 WL 3935446 (5th Cir. Aug. 26, 2024) ("The history interwoven with the 'right of the people to keep and bear Arms,' U.S. const. amend. II, indicates that the Second Amendment's text has long incorporated the right of personal gunsmithing, i.e., the right of private individuals to modify or acquire modifications to lawfully bearable firearms so as to increase their accuracy and safety for a more effective exercise of self-defense."). Like virtually all products, firearm parts can wear and need replacement. Also, stock parts may not be conducive to the user's specific needs. Or a conducive part may be absent and need to be added.

## III.    THE DISTRICT COURT CORRECTLY HELD THAT PICA'S REGISTRATION REQUIREMENT VIOLATES THE SECOND AMENDMENT

PICA's prohibition on residents keeping or bearing certain firearms and parts that PICA restricts, merely because those residents do not register—i.e., submit to the Illinois Police, under oath, various details about their protected firearms and parts, 720 ILCS 5/24-1.9(d)—violates the Second Amendment. Those who refuse to register—like plaintiff Chris Moore and members of plaintiff Gun Owners of America—are deprived of their arms by government fiat. *See Barnett v. Raoul*, 756

9

F. Supp. 3d at 649. This Court did not hold that registration requirement "constitutional" in *Bevis*; it simply explained that, "[i]f … the state [were to] prevail in its defense of the Act[,] … then the registration requirement will be valid as long as it can withstand rational basis review." 85 F.4th at 1202 (emphases added), *contra* State.Br.54. Because the State did not prevail in its defense of PICA in the main, it does not matter whether PICA's registration scheme satisfies rational-basis review. What matters is whether forcing people to register constitutionally protected arms is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

The State did not carry its burden on that front. Indeed, it identified no historical analogue whatsoever for anything comparable to PICA, let alone any "distinctly similar" ones, as it must. *Id*. at 26. The State instead just tried, as it continues to do now, to shoehorn PICA into the "shall-issue" carry-license schemes discussed in *Bruen*. State.Br.54. But PICA shares neither the "why" nor the "how" of such regimes, which typically require background checks and training to confirm potential licensees' eligibility and competency to carry firearms. *Bruen*, 597 U.S. at 38 n.9. In stark contrast, PICA's registration requirement, by the State's admission, is solely designed to prevent the "acquisition of new [PICA arms]." State.Br.55; *see* 430 ILCS 65/4.1. It is thus far afield from carry regimes. *See Heller v. District of Columbia*, 670 F.3d 1244, 1291 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (distinguishing permissible "licensing laws" from impermissible "registration" requirements). While a dissenting opinion, Justice Kavanaugh explained that registration was upheld in that case only because the majority then applied

10

intermediate scrutiny, which *Bruen* now forecloses, and the majority acknowledged that registration requirements, at least for long-guns, are not longstanding. *Id*. at 1255-56.

That is because there is no historical tradition of registering arms. Indeed, there can be no historical tradition of registering arms with the government when one of the Second Amendment's main purposes was to be a "doomsday provision" for the People to protect themselves from a tyrannical government. *See Silveira v. Lockyer*, 328 F.3d 567, 570 (9th Cir. 2003) (Kozinski, J., dissenting from denial of rehearing en banc). The history showing this was the mainstream understanding of the Second Amendment is so overwhelming as to be beyond debate—even discussed in schoolbooks of the 19th century.[1] As a result, our nation's historical tradition has been to maintain privacy around firearm ownership. Even as recently as the 1980s,

---

[1] *See*, *e.g.*, Henry Flanders, *An Exposition of the Constitution of the United States* 258 (1860) ("With arms in their hands, the people will not be likely to permit the overthrow of their institutions by the unscrupulous ambition of a civil magistrate or military chieftain. The very fact of their being armed will serve as a check to any arbitrary or forcible invasion of their constitutional rights."); Edward D. Mansfield, *The Political Manual: Being a Complete View of the Theory And Practice of the General and State Governments of the United States, Adapted to the Use of Colleges, Academies, and Schools* 205 (1861) ("It is scarcely necessary to say, that the right of the people thus to bear arms is the foundation of their liberties; for, without it, they would be without any power of resistance against the existing government."); George W. Paschal, *The Constitution of the United States Defined and Carefully Annotated* 256 (1868) ("[The Second Amendment] is based on the idea, that the people cannot be oppressed or enslaved, who are not first disarmed."); William C. Robinson, *Notes On Elementary Law* 103 (1875) ("The constitution of the United States secures the right to keep and bear arms, such as are used for purposes of war, in defence of the citizens or the state."); Andrew W. Young & Salter S. Clark, *The Government Class Book: A Youth's Manual of Instruction in the Principles of Constitutional Government and Law* 185 (1880) ("Right to Keep Arms—This means the right of every one to own and use, in a peaceful manner, warlike weapons .... It was thought that without it, ambitious men might, by the aid of the regular army, overthrow the liberties of the people and usurp the powers of government.")

the Firearms Owners' Protection Act forbade the federal government from keeping a registry directly linking non-NFA firearms to their owners, a law still in effect today. *See* 18 U.S.C.A. § 926. This reveals a belief among Americans that firearm ownership has been and remains a private matter. At bottom, no historical tradition supports requiring registration with the government of classes of commonly owned firearms or firearm parts merely to maintain their lawful possession.

In all events, PICA's registration regime no longer served that purpose once the district court held the rest of the law unconstitutional, and the State did not even try to identify any other purpose it could serve that is consistent with historical tradition—because there is none. *See id.* (explaining that registration schemes have "not been traditionally required in the United States and, indeed, remain[] highly unusual today"). The district court thus correctly held that scheme unconstitutional.

## CONCLUSION

For these reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

/S/  C.D. MICHEL
C.D. Michel
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
(562) 216-4444
cmichel@michellawyers.com
Counsel for *Federal Firearms Licensees of Illinois* Appellees

12

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

    1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because, according to the "word count" function of Microsoft Word 365, it contains 3,288 words, excluding the parts Federal Rule of Appellate Procedure 32(f) exempts from the count.

    2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.


June 6, 2025                               s/ C.D. Michel
                                              C.D. Michel

## CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30(D)

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required by Circuit Rule 30(a) and (b) are included in the appendix.

June 6, 2025

s/ C.D. Michel
C.D. Michel

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ C.D. Michel
C.D. Michel