**Nos. 24-3060, 24-3061, 24-3062, 24-3063**

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

CALEB BARNETT, et al.,

*Plaintiffs-Appellees*,

v.

KWAME RAOUL, Attorney General of Illinois,
and BRENDAN F. KELLY, Director of the Illinois State Police,

*Defendants-Appellants*.

On Appeal from the United States District Court for the
Southern District of Illinois, No. 3:23-cv-00209-SPM
Honorable Stephen P. McGlynn, Judge Presiding

**BRIEF OF SECOND AMENDMENT DEFENSE AND EDUCATION COALITION, LTD., AND SECOND AMENDMENT LAW CENTER, INC., AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE**

Donald Kilmer
LAW OFFICES OF DONALD KILMER, APC
14085 Silver Ridge Rd.
Caldwell, ID 83607
(408) 264-8489
*Counsel for Amicus Curiae*
*Second Amendment Defense & Education Coalition, Ltd.,*
*and Second Amendment Law Center, Inc.*

June 13, 2025

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-3060, 24-3061, 24-3062, 24-3063

Short Caption: Barnett, et al., v. Raoul, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
SECOND AMENDMENT DEFENSE AND EDUCATION COALITION, LTD.

SECOND AMENDMENT LAW CENTER, INC.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Donald E. J. Kilmer, Jr., Attorney at Law  |  Law Offices of Donald Kilmer, A Professoinal Corporation

(3) If the party, amicus or intervenor is a corporation:

   i) Identify all its parent corporations, if any; and
   N/A

   ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
   N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: /s/ Donald Kilmer    Date: June 13, 2025

Attorney's Printed Name: Donald Kilmer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✔    No ☐

Address: 14085 Silver Ridge Road

Caldwell, Idaho  83607

Phone Number: (408) 264-8489    Fax Number: None

E-Mail Address: don@dklawoffice.com

rev. 12/19 AK

# TABLE OF CONTENTS

                                                                                                      **Page**

Rule 26.1 Disclosure ................................................................................................... ii

Table of Contents ....................................................................................................... iii

Table of Authorities ................................................................................................... iv

Interest of Amici ......................................................................................................... 1

Introduction ................................................................................................................ 2

Summary of Argument ............................................................................................... 2

Argument .................................................................................................................... 5

I.       The Supreme Court: "AR-15s Are In Common Use" ........................................ 5

           A.      Precedent or Considered Dicta Indicates That a Majority of the Supreme Court Justices Already Agree That AR-15s Are in Common Use. ................................... 5

           B.      This Court Should Defer to Precedent Labeled as Such by the Supreme Court ..... 8

           C.      This Court Should Defer to Considered Dicta from the Supreme Court That has Obvious Predictive Value. ..................................................................................... 9

Conclusion ................................................................................................................ 12

Certificate of Compliance with Type-Volume Limit ............................................... 13

Certificate of Service ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ames v. Ohio Dep't of Youth Servs*,
　No. 23-1039, 605 U.S. __, 2025 WL 1583264 (June 5, 2025) .................................................. 9

*Arizona v. Evans*,
　514 U.S. 1 (1995) ..................................................................................................................... 9

*Barnett v. Raoul*,
　756 F. Supp. 3d 564 (S.D. Ill. 2024) ...................................................................................... 10

*Bevis v. City of Naperville*,
　85 F.4th 1175 (7th Cir. 2023) ................................................................................................... 8

*Caetano v. Massachusetts*,
　577 U.S. 411 (2016) ............................................................................................................ 2, 9

*District of Columbia v. Heller*,
　554 U.S. 570 (2008) ................................................................................................................ 2

*Duncan v. Bonta*,
　19 F.4th 1087 (9th Cir. 2021) ................................................................................................... 3

*Duncan v. Bonta*,
　131 F.4th 1019 (9th Cir. 2025) ................................................................................................. 3

*Duncan v. Bonta*,
　133 F.4th 852 (9th Cir. 2025) ................................................................................................... 3

*Ezell v. City of Chicago*,
　651 F.3d 684 (7th Cir. 2011) .................................................................................................... 2

*Friedman v. City of Highland Park*,
　784 F.3d 406 (7th Cir. 2015) .................................................................................................... 5

*Friedman v. Highland Park*,
　577 U.S. 1039 (2015) ........................................................................................................... 3, 5

*Garland v. Cargill*,
　602 U.S. 406 (2024) ............................................................................................................ 2, 5

*Harrel v. Raoul*,
　__ U.S.__, 144 S. Ct. 2491 (2024) ...................................................................................... 4, 5

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011)...................................................................... 5, 6

*Jackson v. City and Cnty. of San Francisco*,
    576 U.S. 1013 (2015)...................................................................................... 3

*McCoy v. Mass. Inst. of Tech.*,
    950 F.2d 13 (1st Cir. 1991) ...........................................................................11

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010)..................................................................................... 2, 5

*Miranda v. Arizona*,
    384 U.S. 436 (1966)....................................................................................... 10

*Moore v. Madigan*,
    702 F.3d 933 (7th Cir. 2012).......................................................................... 2

*Nat'l Rifle Ass'n of Am., Inc., v. City of Chicago*,
    567 F.3d 856 (2009)....................................................................................... 4

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022)............................................................................... 2, 6, 8, 9

*Newdow v. Peterson*,
    753 F.3d 105 (2d Cir. 2014) .........................................................................11

*Schwab v. Crosby*,
    451 F.3d 1308 (11th Cir. 2006) ...................................................................11

*Silvester v. Becerra*,
    583 U.S. 1139 (2018).................................................................................. 2, 3

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    __ U.S. __, 2025 U.S. LEXIS 2199 (June 5, 2025)....................................... 2

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
    No. 23-1141, 2025 WL 1583281 (June 5, 2025) ......................................... 7

*Snope v. Brown*,
    No. 24-203, __ U.S. __, 2025 WL 1550126 (June 2, 2025) ....................... 6

*Staples v. United States*,
    511 U. S. 600 (1994)................................................................................... 6, 9

*United States v. Bloom*,
    149 F.3d 649 (7th Cir. 1998).................................................................10, 11

*United States v. Montero-Camargo*,
   208 F.3d 1122 (9th Cir. 2000) ...............................................................................11

**Other Authorities**

18 Moore's Federal Practice - Civil § 134.03 (2025) ....................................................11

Gross, Terry, *How the AR-15 Became the Bestselling Rifle in the U.S.*, NPR (Apr. 20, 2023) ...... 7

Lucy, William, "Judges, Distinguished," *The New Oxford Companion to Law* (Peter Cane & Joanne Conaghan eds., 2008)................................................................................... 7

## INTEREST OF AMICI[1]

The Second Amendment Defense and Education Coalition, Ltd. ("SADEC"), is an Illinois not-for-profit corporation. SADEC is dedicated to the defense of human and civil rights secured by law including the right to keep and bear arms. SADEC's activities are furthered by complementary programs of litigation and education.

The Second Amendment Law Center ("2ALC") is a nonprofit corporation in Henderson, Nevada. The Center defends the individual rights to keep and bear arms as envisioned by the Founders. 2ALC also educates the public about the social utility of firearm ownership and provides accurate historical, criminological, and technical information to policymakers, judges, and the public.

---

[1] No party's counsel authored this brief in whole or in part and other than the named amici, no person contributed money to fund its preparation or submission. All parties consent to the submission of this brief.

## INTRODUCTION

The Supreme Court's existing Second Amendment jurisprudence is well developed enough to affirm the trial court. This conclusion follows from the holdings of cases that this Court is duty bound to follow as precedent coupled with considered and compelling dicta by the Supreme Court that should be accorded weight as if it is precedent.

## SUMMARY OF ARGUMENT

The Seventh Circuit has a more nuanced relationship with the Second Amendment than (for example) the Ninth Circuit. This Court, on at least two occasions, has successfully applied the *ratio decidendi* of the Supreme Court's cases in this field. *See, e.g.*, *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (holding that the city cannot impose required training for exercising a fundamental right while outlawing that training within city limits). Even without the benefit of the methodology crystalized in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), this Court reached the correct result in a similar challenge a decade earlier through a scrupulous application of *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago,* 561 U.S. 742 (2010). *Moore v. Madigan,* 702 F.3d 933 (7th Cir. 2012) (recognizing that the right to keep and bear arms includes the right to carry arms in public).

Today, in this case, with the additional vertical authority (both holdings and considered dicta) provided in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), *Garland v. Cargill*, 602 U.S. 406 (2024), and *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, __ U.S. __, 2025 U.S. LEXIS 2199 (June 5, 2025), this Court can affirm its place as a vanguard circuit that prioritizes getting the Constitution right.

The Ninth Circuit's efforts in this regard are somewhat less praiseworthy. Justice Thomas, dissenting from a denial of certiorari in *Silvester v. Becerra*, 583 U.S. 1139 (2018) has already

2

observed that "[T]he Ninth Circuit ignored several ordinary principles of appellate review." He added:

> The Ninth Circuit's deviation from ordinary principles of law is unfortunate, though not surprising. Its dismissive treatment of petitioners' challenge is emblematic of a larger trend. As I have previously explained, the lower courts are resisting this Court's decisions in *Heller* and *McDonald* and are failing to protect the Second Amendment to the same extent that they protect other constitutional rights.

*Id.* at 1147-48 (citing *Friedman v. Highland Park*, 577 U.S. 1039, 1039-43 (2015) (Thomas, J., dissenting from denial of certiorari); *Jackson v. City and Cnty. of San Francisco*, 576 U.S. 1013, 1013-18 (2015) (Thomas, J., dissenting from denial of certiorari)). For context, one Ninth Circuit judge in a pre-*Bruen* opinion that considered a challenge to restrictions on firearm magazine capacity, reported the remarkable statistic that the Ninth Circuit has managed to maintain a perfect "50-0 record against the Second Amendment." *Duncan v. Bonta*, 19 F.4th 1087, 1167 n.8. (9th Cir. 2021) (en banc).

Even today, the Ninth Circuit's record upholding all manner of onerous firearm regulations remains unblemished, chaotic, and defiant. Second Amendment jurisprudence in that circuit has escalated to an internecine intra-circuit conflict, most recently (again) in *Duncan v. Bonta*, 133 F.4th 852 (9th Cir. 2025) (en banc). The most recent iteration of that case generated dissents on both the merits and that Court's irregularities with respect to en banc appellate review. The conflict has even produced a first-of-its-kind video dissent imbedded in the opinion. *Id.* at 916. The *Duncan* dissenters didn't mince words: "[T]he majority didn't just butcher the Second Amendment and give a judicial middle finger to the Supreme Court. It also spurned statutory procedure for en banc proceedings." *Id.* at 890. (Nelson, J., dissenting). *See also Duncan v. Bonta*, 131 F.4th 1019 (9th

3

Cir. 2025) (for a separately reported opinion explaining how the Ninth Circuit did, or did not, follow en banc procedures in that case).

In a prior like-circumstance, this Court, rather than grandstand, followed procedure, precedent, and principle, when it declined to presume overruling Supreme Court precedent. *Nat'l Rifle Ass'n of Am., Inc., v. City of Chicago*, 567 F.3d 856 (2009), *reversed and remanded by McDonald*, 561 U.S. 742 (2010) (noting that controlling precedent, though likely obsolete, precluded Fourteenth Amendment incorporation of the Second Amendment under any theory). This Circuit noted that its sister-circuit (the Ninth) had taken the bolder path, *id.* at 857, but declined, as a court of appeals, to usurp that power of the "Justices" of the only Supreme Court identified in Article III, *id.* at 860. The case under consideration in this matter requires the same fortitude. Rather than demur out of respect for precedent of the Supreme Court, however, it must affirm the work of the trial court out of the same respect.

The *Friedman* dissental, and the earlier interlocutory iteration of this case, *Harrel v. Raoul*, __ U.S.__, 144 S. Ct. 2491 (2024), were the Supreme Court's brushback pitches to this Court. Yet it is not too late to get it right. Afterall, forcing this case to an evidentiary hearing so that the matter could be decided on a full evidentiary record, is in keeping with this circuit's "workhorse" reputation. And now, with the opportunity presented to affirm the trial court's judgment on a fully developed record, the Seventh Circuit can cement its reputation as a court that is committed to resolving complex legal issues in a manner that is faithful to both the Constitution and the judicial norms of how American jurisprudence functions under that charter.

# ARGUMENT

I. THE SUPREME COURT: "AR-15S ARE IN COMMON USE"

### A. Precedent or Considered Dicta Indicates That a Majority of the Supreme Court Justices Already Agree That AR-15s Are in Common Use.

Though a crude rubric, at least six living—and one recently deceased—Supreme Court Justices have opined that the semiautomatic rifles at issue in this case are "common."

In *Friedman v. City of Highland Park*, 577 U.S. 1039 (2015), Justice Thomas filed a dissental from denial of certiorari to the Seventh Circuit, which was joined by (the late) Justice Scalia (author of *Heller*):

> The City's ban is thus highly suspect because it broadly prohibits **common** semiautomatic firearms used for lawful purposes. Roughly 5 million Americans own AR-style semiautomatic rifles. [citation omitted] The overwhelming majority of citizens who own and use such rifles do so for lawful purposes, including self-defense and target shooting. [citation omitted] Under our **precedents**, that is all that is needed for citizens to have a right under the Second Amendment to keep such weapons.

*Id.* at 1042 (citing *Friedman v. City of Highland Park*, 784 F.3d 406, 415, n.3 (7th Cir. 2015); *McDonald*, 561 U.S. at 767-68; *Heller*, 554 at 628-29)) (emphasis added).

In *Harrel v. Raoul*, __ U.S.__, 144 S.Ct. 2491 (2024), Justice Alito would have granted certiorari to the Seventh Circuit in an earlier iteration of this case. Justice Thomas' concurrence in the denial lamented the interlocutory posture of the case but also reminded the reader that "[t]he AR-15 is the most popular semi-automatic rifle" in America and is therefore undeniably '**in common use today**.'" *Id.* at 2492 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1287 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); and citing *Garland v. Cargill*, 602 U.S. 406, 430-31 (2024) (Sotomayor, J., dissenting) (describing "semiautomatic rifles" such as the AR-15 as "**commonly available**") (Thomas, J., concurring in denial of certiorari).

The Supreme Court recently denied certiorari to the Fourth Circuit in another challenge to a semiautomatic rifle ban. *Snope v. Brown*, No. 24-203, __ U.S. __, 2025 WL 1550126 (June 2, 2025). Once again, Justice Alito and Justice Gorsuch would have granted the petition. Though apparently withholding his vote for granting certiorari, Justice Kavanaugh (who was the dissenting circuit judge in the above-mentioned *Heller v. District of Columbia*, 670 F. 3d 1244), issued a statement respecting the denial. He noted that "Americans today possess an estimated 20 to 30 million AR-15s. And AR-15s are legal in 41 of the 50 States, meaning that the States such as Maryland that prohibit AR-15s are something of an outlier." *Snope*, No. 24-203, 2025 WL 1550126, at *1 (Kavanaugh, J., statement respecting denial of certiorari) (citing *Staples v. United States*, 511 U. S. 600, 612 (1994) (stating that AR-15s "traditionally have been widely accepted as lawful possessions").

> Given that millions of Americans own AR-15s and that a significant majority of the States allow possession of those rifles, petitioners have a strong argument that AR-15s are in "**common use**" by law-abiding citizens and therefore are protected by the Second Amendment under *Heller*. [citation omitted] If so, then the Fourth Circuit would have erred by holding that Maryland's ban on AR-15s complies with the Second Amendment.
>
> ….
>
> In short, under this Court's **precedents**, the Fourth Circuit's decision is questionable.

*Id.* at *1-2 (citing *Heller v. District of Columbia*, 670 F. 3d at 1286-88 (Kavanaugh, J., dissenting) (emphasis added). Justice Thomas issued another dissental explaining how to apply *Bruen* to this controversy and reiterating his observations that semiautomatic rifles are in common use. *Id.* at 3-11 (Thomas, J., dissenting from denial of certiorari).

Writing for a majority in *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, No. 23-1141, 2025 WL 1583281 (June 5, 2025), Justice Kagan observed that "[AR-15 and AK-47 rifles] **are both widely legal and bought by many ordinary consumers**. (The AR-15 is the most popular rifle in the country….)." *Id.* at *8 (citing Terry Gross, *How the AR-15 Became the Bestselling Rifle in the U.S.*, NPR (Apr. 20, 2023) (emphasis added).

If you are keeping a roster, that gives us four sitting and one deceased Justice of the Supreme Court who thinks it has already been persuasively established that the semiautomatic rifles at issue in this case are common—even ordinary—rifles (Justices Thomas, Kavanaugh, Sotomayor, Kagan, and the dearly departed Scalia[2]). And while Justices Alito and Gorsuch have not expressly stated over their signatures in any published opinion that such rifles are common and ordinary, their assent to this proposition is strongly implied by the decisions they have authored or joined in the past.

The only remaining unknowns on the Court who have not expressly adopted the proposition that semiautomatic rifles are in common and lawful use are Chief Justice Roberts (who voted with the majority in *Heller*, *McDonald*, *Caetano*, *Bruen*, *Cargill*, and *Smith & Wesson*), Justice Barrett (who voted with the majority in *Bruen, Cargill*, and *Smith & Wesson*), and Justice Jackson (who concurred in *Smith & Wesson*). With a line-up such as this, it is risky for a lower court to buck the obvious trend being set by the higher court.

---

[2] Of course, a judge no longer sitting on the bench, whether retired or deceased, exercises no judicial power. But a revered judge's opinion might have great persuasive effect based on: (1) acknowledged legal erudition, (2) fair-minded judge-craft, (3) a long career, and (4) a commitment to both intellectual rigor and fidelity to the law. *See* William Lucy, "Judges, Distinguished," *The New Oxford Companion to Law* 649, 650 (Peter Cane & Joanne Conaghan eds., 2008).

**B.     This Court Should Defer to Precedent Labeled as Such by the Supreme Court.**

Justices Thomas and Kavanaugh have already stated that this showing of "common use for lawful purposes" is the only threshold required for a finding that these weapons are presumptively protected by the Second Amendment's arms guarantee. Furthermore, both Justices have characterized that rule as having a pedigree based on existing Supreme Court *precedent* and not mere obiter dicta. *See* emphases from block quotes, *supra*. Under *Bruen*, the case then becomes one in which the state of Illinois bears the burden of showing that such common and ordinary weapons have been banned by historically relevant laws. 597 U.S. at 28-29. That inquiry is both: fact-based—did such laws exist (?)—and a mixed question of fact and law—are the modern laws relevantly similar to the ancient laws (?). This was a burden that the trial court found the state had not met.

The previous—though interlocutory—decision by this Court in this case imposed an additional burden on Plaintiff-Appellees, namely that they also prove that the weapons at issue are not "exclusively or predominantly useful in military service." *Bevis v. City of Naperville*, 85 F.4th 1175, 1194 (7th Cir. 2023). But there is no such test for military utility in any of the Supreme Court's decisions on weapon types. This test is made up out of whole cloth and cuts against existing precedent.

First, such a standard is completely absent from existing caselaw governing the challengers' prima facie burden. Second, it appears to be an arbitrary mutation of the "dangerous and unusual" test that might arguably be imposed on the government defending the challenged law, but not on the challenger unless during rebuttal. Third, to the extent the tradition of restricting the *carrying* of "dangerous and unusual" arms even applies to Illinois's restrictions on mere *possession*, it is a conjunctive test. "A weapon may not be banned [from public carry] unless it is

both dangerous and unusual." *Caetano v. Massachusetts*, 577 U.S. 411, 418 (2016) (Alito, J., concurring in the judgment); *accord Bruen*, 597 U.S. at 21, 47. The military-arms standard invented by this Court is inconsistent with such a test. In the Supreme Court's "type of arms" cases, *Heller* held that semiautomatic handguns are protected, *id.* at 629; and *Caetano* held that electronic stun guns are protected, while reiterating that *Heller* had rejected a military utility test, *id.* at 412. For a fully developed argument of the context for applying a "dangerous and unusual" test, but only to public carry, *see* Response Brief of *FFL-IL* Appellees, Doc. 60 at 4-6.

Finally, the same week that the Supreme Court denied certiorari in *Snope*, it struck down an attempt to impose such a-textual burdens onto plaintiffs in Title VII cases, chastising the inferior court for straying from statutory text and Supreme Court precedent. *Ames v. Ohio Dep't of Youth Servs*, No. 23-1039, 605 U.S. __, 2025 WL 1583264 (June 5, 2025). In sum, the text and existing case law controls and should not be subjected to judge-made additives.

    **C.**     **This Court Should Defer to Considered Dicta from the Supreme Court That has Obvious Predictive Value.**

In a 1995 dissent, Justice Ginsburg revealed a "percolation doctrine" that is apparently part of the calculus for granting certiorari at the High Court. "We have in many instances recognized that when frontier legal problems are presented, periods of 'percolation' in, and diverse opinions from, state and federal appellate courts may yield a better informed and more enduring final pronouncement by this Court." *Arizona v. Evans*, 514 U.S. 1, 23 n.1 (1995).

At least four sitting Justices on the current Supreme Court have expressed at one time or another that the issues presented by this case might have percolated enough already. But in support of Justice Ginsburg's recipe, the timing and ingredients of this case might be just right. There is a fully developed record from a four-day trial, with additional evidence presented in the form of

9

exhibits and sworn declarations. A trial judge has had the opportunity to weigh the evidence presented by the parties and to test the credibility of witnesses those parties tendered. The technical—both legal and mechanical—evidence is now a matter of record, and neither side can complain that they were not given a full hearing. A 168-page opinion has been carefully prepared by the trial judge, who (though he was skeptical that it was controlling) faithfully applied the military utility test from *Bevis*—and *still* found the Illinois statute constitutionally deficient. *Barnett v. Raoul*, 756 F. Supp. 3d 564, 599, 660 (S.D. Ill. 2024). The table is now set for this Court's work.

Is that work to be the willful exhibitionism of an erratic en banc Ninth Circuit, or the craftsman-like work that the Seventh Circuit is known for? The answer should turn on how this Court treats the considered dicta that the Supreme Court has been posting for the past 17 years in its Second Amendment rulings, assuming that this Court doesn't just take Justices Thomas and Kavanaugh at face value, that binding precedent already exists.

In *United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998), *overruled on other grounds*, this Court proffered a theory for why Supreme Court dicta (the dissentals, statements about certiorari denials, and considered dicta cited above) is entitled to something more than mere persuasive authority.

> Even if the passage could be called dictum, it is not an aside unrelated to the subject of the case. The question had been briefed by the parties, so the statement was informed rather than casual; it is a considered expression by the Court supported by earlier cases … that supply more extensive analysis and is not incompatible with any decision before or since.… It would ill serve the interests of litigants and the judicial system as a whole to row against the tide of such statements.… The Supreme Court often articulates positions through language that an unsympathetic audience might dismiss as dictum—consider the catalog of rules in *Miranda v. Arizona*, 384 U.S. 436 … (1966)—and it expects these formulations to be followed. [citation omitted] The Court can hear only a small portion of all litigated disputes; ***it uses considered dicta to influence others for***

10

> ***which there is no room on the docket***. Appellate courts that dismiss these expressions and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving the litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.

*Id.* at 653 (double emphasis added).

The Seventh Circuit is not alone in this formulation. *See, e.g.*, *Newdow v. Peterson*, 753 F.3d 105, 108 n.3 (2d Cir. 2014) (per curiam) (noting that circuit courts "have an obligation to accord great deference to Supreme Court dicta, absent a change in the legal landscape") (internal quotation omitted); *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991) ("We think that federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement."); *Schwab v. Crosby*, 451 F.3d 1308, 1325-26 (11th Cir. 2006) (citing cases that give precedential value to Supreme Court dicta); *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc) ("As we have frequently acknowledged, Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold; accordingly, we do not blandly shrug them off because they were not a holding.") (internal quotations omitted). *See also* 18 Moore's Federal Practice - Civil § 134.03 (2025), n.11.1 (advising circuit courts to especially pay heed to Supreme Court's dicta) (listing cases).

Whether this Court applies what two Justices have already labeled binding precedent or supplements that with the more voluminous considered *dicta* of the Supreme Court set forth above, when applied to the facts of this case as developed by the trial court below, this Court should affirm.

11

## CONCLUSION

In 2007, the battlespace for the meaning of the Second Amendment was a wasteland. Whatever caselaw there was before then was both opaque and contradictory. Since then, a renaissance of scholarship has revived the amendment, along with a reconsideration of standards of review in other areas of constitutional law, such as religious liberty, property rights, search and seizure law, and limits on the administrative state. The competition among the circuits to imprint a particular interpretation of the right to keep and bear arms has been fierce, but it has not occurred and cannot, going forward, be allowed to occur in a vacuum.

In seventeen years, the Supreme Court has dropped more than a breadcrumb trail with its Second Amendment jurisprudence. This court should take up that well marked trail and affirm the decision below.

Respectfully submitted,

June 13, 2025

/s/ Donald Kilmer
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Rd.
Caldwell, ID 83607
(408) 264-8489
*Counsel for Amici Curiae*
*Second Amendment Defense & Education Coalition, Ltd., and Second Amendment Law Center, Inc.*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1.  This amicus curiae brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 29 because, according to the "word count" function of Microsoft Word 365, it contains 3,476 words, excluding the parts Federal Rule of Appellate Procedure 32(f) exempts from the count.

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 12-point Times New Roman font.

June 13, 2025                                                          */s/ Donald Kilmer*
                                                                       Donald Kilmer

## CERTIFICATE OF SERVICE

  I hereby certify that on June 13, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

June 13, 2025                 */s/ Donald Kilmer*
                               Donald Kilmer